## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JANE DOE,**

       **Plaintiff,**

                               **Case No. 2:23-cv-3566**
      **v.**                              **Judge Michael H. Watson**
                                    **Magistrate Judge Elizabeth P. Deavers**

**THE OHIO STATE UNIVERSITY,**
     *et al.,*

       **Defendants.**

### OPINION AND ORDER

This matter is before the Court to resolve several matters, including Plaintiff's leave to proceed under a pseudonym (ECF Nos. 47, 51); competing motions for entry of a protective order (ECF Nos. 20, 49, 52); and Defendants' motion to compel (ECF No. 50).  The Court resolves these matters as follows.

### I.      PLAINTIFF'S USE OF A PSEUDONYM

The issue of Plaintiff's use of a pseudonym can be addressed quickly at the outset.  By oral order issued at the status conference on May 6, 2024, the Court granted Plaintiff's unopposed request for leave to proceed under the pseudonym Jane Doe.  In light of this ruling, the Clerk is **DIRECTED** to re-caption this matter as "*Jane Doe v. The Ohio State University, et al*."  Further, Plaintiff is to be referred to in all public filings by the pseudonym Jane Doe.  Accordingly, the Clerk is **DIRECTED** to terminate ECF Nos. 47 and 51 from the Court's pending motions list.

### II.      MOTIONS FOR A PROTECTIVE ORDER

The matter of the competing protective orders requires some background.  Defendants initially sought a protective order by motion filed January 30, 2024.  (ECF No. 20.)  Plaintiff

filed her own motion as well.  (ECF Nos. 21, 22[1].)  By Opinion and Order dated April 4, 2024, the Court advised the parties that it was inclined to grant Defendants' motion but directed the parties to meet and confer one additional time in an effort to submit an agreed version of the protective order.  (ECF No. 34.)  This resulted in the Court holding two discovery conferences with the parties in an effort to resolve the matter (*see* ECF Nos. 38, 48) followed by the parties' filing of renewed motions.  (ECF Nos. 49, 52.)   No responses or replies have been filed by either party.  For the following reasons, the Court **GRANTS**, in part, and **DENIES**, in part, each proposed protective order.

### A. LEGAL STANDARD

Rule 26(c) of the Federal Rules of Civil Procedure allows courts to enter protective orders upon a showing of good cause. Fed. R. Civ. P. 26(c).  Specifically, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26.  Courts routinely enter protective orders to govern discovery in cases as long as they are not violative of Rule 26(c) and the Sixth Circuit has recognized the practical use of such orders.  *Wolpert v. Branch Banking Tr. & Co.*, No. 3:19-CV-138-TRM-DCP, 2023 WL 2824900, at *1 (E.D. Tenn. Mar. 1, 2023) (citation omitted).  Such an order, considered a blanket protective order, "'allows the parties to designate certain information as confidential without the need for the Court to review each piece of information before that designation.'" *N.T. by & through Nelson v. Children's Hosp. Med. Ctr.,* No. 1:13CV230, 2017 WL 3314660, at *5 (S.D. Ohio Aug. 3, 2017) (quoting *Anderson v. Frye*, No. 2:05-cv-0520, 2006 U.S. Dist. LEXIS 46352, at *3 (S.D. Ohio July 7, 2006)).  To comply with Rule 26(c), a blanket protective order requires a party to designate documents "confidential" in good faith and

---

[1] The Court struck Plaintiff's original filing (ECF No. 21) by order dated April 4, 2024.

2

subject to the power of other parties to challenge such designations. *Id.* (citing *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2013 U.S. Dist. LEXIS 165722, at *9-10, 2013 WL 6122399 (S.D. Ohio Nov. 21, 2013)).

### B. ANALYSIS

As a result of the parties' joint efforts and with the Court's intervention, the dispute involving the current proposed versions of a protective order is more limited and direct than at the outset. To be clear, pursuant to the Court's directive, Plaintiff's proposed protective order is a version of Defendant's containing Plaintiff's proposed edits. Thus, the Court begins its analysis with the language of Defendant's proposed version while addressing the current areas of dispute in turn.

#### 1. Section 2, Form and Timing of Designation.

Defendant proposes the following language:

> **2. Form and Timing of Designation.** A party may designate documents as confidential and restricted from disclosure under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document in a manner that will not interfere with the legibility of the document and that will permit complete removal of the CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER designation. Documents shall be designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER prior to or at the time of the production or disclosure of the documents. Inadvertent failure to designate a document as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER may be corrected by supplemental written notice given as soon as practicable. The designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

Plaintiff, citing practicality, proposes the following alternative, with the language at issue italicized in bold:

> **2. Form and Timing of Designation.** ***A party wishing to designate any document or portion thereof as confidential pursuant to this Order shall mark each confidential page with a stamp identifying it as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," if practical to do so. For any multiple-page document designated as confidential in its entirety, the producing party may***

3

*alternatively stamp the first page only. The words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" must be placed or affixed on the document in a manner that will not interfere with the legibility of the document and that will permit complete removal of the CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER designation. Non-textual ESI, such as photographs, videos, and audio recordings, may be stamped in the above manner or designated as confidential in writing between the parties (e.g. via email or transmittal letter).*

Documents shall be designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER prior to or at the time of the production or disclosure of the documents. Inadvertent failure to designate a document as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER may be corrected by supplemental written notice given as soon as practicable. The designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

The Court finds that the parties' dispute here can be resolved by use of the language contained in the Court's exemplar one-tier protective order. The Court-endorsed language is designed to promote consistency on these issues. Accordingly, the Court adopts the following language in lieu of either proposal:

**1. Form and Timing Of Designation.**

**a.    Documents And Written Materials.** The Producing Entity shall designate any document or other written materials as confidential pursuant to this Order by marking each page of the material with a stamp identifying it as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," if practical to do so. The person or entity designating the material shall place the stamp, to the extent possible, in such a manner that it will not interfere with the legibility of the document. Materials shall be so-designated prior to, or at the time of, their production or disclosure.

**b.    Electronically Stored Information ("ESI"):** If a production response includes ESI, the Producing Entity shall make an effort to include within the electronic files themselves the designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" to the extent practicable. If that is not practicable, then the Producing Entity shall designate in a transmittal letter or email to the party to whom the materials are produced (the "Receiving Party") using a reasonable identifier (e.g., the Bates range) any portions of the ESI that should be treated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

**2. Section 4, Depositions.**

Defendant proposes the following language:

4

**4. Depositions**. Deposition testimony shall be deemed CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER only if designated as such. Such designation shall be specific as to the portions of the transcript or any exhibit to be designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. Counsel for any party in this case may designate deposition testimony or any portion of deposition testimony as confidential by advising the court reporter and counsel of such designation during the course of the deposition. Thereafter, the deposition transcripts and any of those portions so designated shall be protected as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER, pending objection, under the terms of this Order.

For her part, Plaintiff proposes the following alternative, with the language at issue italicized in bold:

**4. Depositions**. Deposition testimony shall be deemed CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER only if designated as such. Such designation shall be specific as to the portions of the transcript or any exhibit to be designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. Counsel for any party in this case may designate deposition testimony or any portion of deposition testimony as confidential by advising the court reporter and counsel of such designation during the course of the deposition ***or by advising counsel within ten (10) business days after receipt of the deposition transcript***. Thereafter, the deposition transcripts and any of those portions so designated shall be protected as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER, pending objection, under the terms of this Order.

In Plaintiff's view, her proposed language is more consistent with the Court's exemplar protective order and minimizes the stress of being called upon to make a decision in "real time." The Court recognizes Plaintiff's concern in light of her *pro se* status. Moreover, Defendant's proposed language places responsibility for designations with counsel.

Again, the parties' dispute here can be resolved by using the Court-endorsed language in its exemplar protective order which uses more neutral language.   Accordingly, the Court adopts the following language in lieu of either proposal:

**4.        Depositions.** Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within ten (10) days after receipt of the deposition transcript. Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected, except that any exhibit that has previously been marked as "CONFIDENTIAL – SUBJECT TO PROTECTIVE

ORDER" at the time of production, and which still bears that mark at the time of its use in a deposition, shall be presumed to be confidential under this Order without further designation.

### 3. Section 5, Medical Information and Section 18

The following targets of dispute are taken together because the Court notes that Plaintiff's objections appear to arise from Plaintiff's concerns regarding what she perceives as forms of restriction on the producing entity's ability to control their own information.  In Section 5, Medical Information, Defendant proposes the following language:

> **5. Medical Information.** The parties shall treat as confidential any information related to the medical condition, history and/or treatment of any person identified by the parties as having information relevant to this litigation, regardless of the method by which such information was obtained and regardless of whether such information has been disclosed in any manner prior to the date of this Order. If any such information is responsive to any of the parties' discovery requests, the responding party shall mark such information as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER when including such information in discovery responses. The fact that such information was received by a third party or disclosed prior to the entry of this Protective Order shall not alter the parties' obligations under this paragraph.

Plaintiff, on the other hand, proposes the following alternative, with the language at issue italicized in bold:

> **5. Medical Information.** The parties shall treat as confidential any information ***produced in discovery*** related to the medical condition, history and/or treatment of any person identified by the parties as having information relevant to this litigation. If any such information is responsive to any of the parties' discovery requests, the responding party shall mark such information as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER when including such information in discovery responses.
>
> ***Designation of information as confidential for the purposes of this Order does not restrict any individual from redisclosing their own medical condition, history, treatment, and/or records. Designation of information as confidential for the purposes of this Order does not restrict any individual ordinarily not responsible for compliance with HIPAA from redisclosing information originally obtained within the individual's personal or social capacity. Designation of information as confidential for the purposes of this Order does not restrict Plaintiff from including descriptions of her medical damages within her complaint or other court filings.***

6

Further, with respect to Defendant's FERPA obligations, Defendant proposes the following language:

> **18.** Nothing in this Order shall prevent non-parties from asserting their own privacy rights in docments held by the parties, including but not limited to those rights provided by FERPA, nor shall this Order prevent Defendants from fulfilling the obligations and responsibilities regarding student privacy placed on them by FERPA.

According to Defendant, this clause is necessary to avoid its being forced "to track down students who may no longer be attending OSU to obtain their permission to release records." (ECF No. 49 at 4.)  As Defendant explains it, "[w]ithout the protective order in place, document production will be unnecessarily complicated and the University may be legally unable to produce relevant education records should students not consent to their releases." (*Id*.)

Plaintiff does not object to the inclusion of Defendant's proposed provision but proposes the following additional language:

> **19. Nothing in this order is intended to restrict the liberties of any current or former student eligible under FERPA to inspect, review, and redisclose records for which they are the subject and only student identified.**
>
> **Nothing in this order is intended to restrict Plaintiff from retaining or redisclosing in perpetuity Plaintiff's own education or employment records, records whose protection under FERPA derives from Plaintiff's own eligibility as the student of interest, or records to which Plaintiff would otherwise be eligible to inspect and review under the law or under University policy.**
>
> **20. Nothing in this order is intended to restrict Plaintiff from retaining or redisclosing in perpetuity information or records within Plaintiff's possession, custody, or control prior to discovery.**
>
> **Should a party produce a document that is already within another party's possession, the recipient has no novel obligations to confidentiality under this Order regarding the copies already in their possession.**

The Court concludes that the issues Plaintiff raises largely are addressed by modifying the language of the General Protections found at Subsection 6a of Defendant's proposed protective order to conform to language set forth in the Court's exemplary order. Consistent with this end, Section 5 of Defendant's proposal is modified to read as follows:

**5. Medical Information.** The parties shall treat as confidential any information related to the medical condition, history and/or treatment of any person identified by the parties as having information relevant to this litigation, regardless of the method by which such information was obtained and regardless of whether such information has been disclosed in any manner prior to the date of this Order. If any such information is responsive to any of the parties' discovery requests, the responding party shall mark such information as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER when including such information in discovery responses.

Beyond this, the Court adopts the following language in lieu of either party's proposal.

Defendant's Subsection 6a is modified in its entirety to include only the following language:

**a. General Protections.** All information designated "Confidential" and subject to this Protective Order, including all information derived therefrom, shall be used by the Receiving Party solely for purposes of prosecuting or defending this Action. The Receiving Party shall not use or disclose the Confidential Information for any other purpose, including but not limited to any business, commercial, or competitive purpose. Except as set forth in this Order, the Receiving Party shall not disclose Confidential Information to any third party. This Order shall not prevent the Producing Entity from using or disclosing information it has designated as Confidential Information, and that belongs to the Producing Entity, for any purpose that the Producing Entity deems appropriate, except that the Producing Entity's voluntary disclosure of Confidential Information outside the scope of this Action may impact the protection that this Order would otherwise provide with regard to such information, once disclosed.

**4. Section 9, Action by the Court.**

Defendant proposes the following language:

**9. Action by the Court**. Any party to the above-captioned case may petition this Court concerning a violation of this Order and request any available remedies, including, but not limited to, contempt proceedings. Applications to the Court for an order relating to any documents designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER shall be by motion under Local Rule 7.2 and any other procedures set forth in the presiding judge's standing orders or other relevant orders. Nothing in this Order or any action or agreement of a party under this Order

8

limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or used in discovery or at trial.

Plaintiff proposes the following alternative language, with certain language at issue italicized in bold:

> **9. Action by the Court**. ***If any party to the above-captioned case believes another to be in violation of this Order, they must notify the alleged party of the violation as soon as practicable. The alleging party shall have an obligation to meet and confer in good faith to remedy the violation constructively and promptly, before they may be permitted to petition this Court for contempt proceedings or sanctions. The parties shall meet and confer within five (5) business days of receipt of the notice of alleged violation. Motions for non-punitive remedy, such as striking or redacting erroneously filed materials, shall not require prior conferral.***
>
> Applications to the Court for an order relating to any documents designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER shall be by motion under Local Rule 7.2 and any other procedures set forth in the presiding judge's standing orders or other relevant orders. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or used in discovery or at trial.

Plaintiff asserts that her proposed language recognizes the potential for inadvertent error and sets forth a procedure designed to reduce the potential for unnecessary and expensive escalation.

Initially, the Court notes that its exemplar protective order does not contain any provision parallel to Defendant's language above. Further, in its briefing, which is largely confined to the position that the Court simply should adopt its proposed protective order, Defendant has not addressed the need for this provision. In that same vein, Defendant has not responded to Plaintiff's proposal to modify the language. Under this circumstance, and particularly in the absence of any argument to the contrary, the Court finds Plaintiff's proposed language reasonable and adopts it here.

**5. Section 11, Information Made Public or Received from a Third Party**

Defendant proposes the following language:

**11. Information Made Public or Received from a Third Party**. Notwithstanding anything to the contrary herein, the parties to the above captioned case shall have no obligation under this Order with respect to information that:

      a. Is or becomes publicly available (except as by unauthorized disclosure); or

      b. Is received from a third-party who is rightfully in possession of such information and who has the right to disclose it.

For her part, Plaintiff proposes the following alternative language, with the language at issue italicized in bold:

**11. Information Made Public or Received from a Third Party**. Notwithstanding any stipulations to the contrary herein, the parties to the above captioned case shall have no additional obligation under this Order with respect to ***information that is or becomes publicly available or information that a party obtains from a third party instead of the opposing party in discovery.***

The Court finds the differences in the parties' proposed language largely a matter of semantics.  Further, the Court notes that Plaintiff's proposal fails to recognize the issue of unauthorized disclosure.  Additionally, Plaintiff's concern regarding control over information is addressed by the modified provision adopted above.  For these reasons, the Court adopts Defendant's proposed language.

Accordingly, Defendant is **DIRECTED** to submit, **WITHIN SEVEN DAYS OF THE DATE OF THIS ORDER**, a copy of a Protective Order consistent with this Order, in Word format to Deavers_chambers@ohsd.uscourts.gov with a signature line for the Undersigned identical in form to that set forth below.

### III.    DEFENDANT'S MOTION TO COMPEL

Defendant has moved to compel Plaintiff's responses to its First Set of Interrogatories.[2] Through its succinct motion, Defendant seeks an order overruling Plaintiff's boilerplate objections and compelling Plaintiff's full and complete responses.  Defendant has attached to its motion Plaintiff's "Fourth Supplemented" set of responses.

Plaintiff has filed a response to Defendant's motion and attached her "Fifth Supplemented" discovery responses and her initial disclosures.  Plaintiff has made these filings in redacted form. In her response, Plaintiff explains that, to the best of her knowledge and understanding, she has provided full and complete responses to the following discovery requests:  1(a) and (b); 2(a) and (b); 3(a); 4(a) and (b); 5(a) and (b); 6(a) and (b); 7(a); 8(b); 9(a) and (b); 10(a) and (b); 11(a) and (b); 12(a) and (b); 13(a) and (b); 14(a) and (b); 15(a) and (b); 16(a) and (b); 17(a) and (b); 18(a) and (b); (19(b) and (c); 21(a) and (b)m, and 22(a).  Plaintiff further asserts that she has not fully answered Interrogatories 19(a); 20(b) and 22(a) and offers an explanation as to why.

Defendant has not filed a reply.  In light of Plaintiff's supplementation and representations and Defendant's failure to challenge them, the Court will limit its consideration here to Interrogatories 19(a); 20(b); and 22(a).

### A.  LEGAL STANDARD

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  "'It is well established that the scope of discovery is within the sound discretion of the trial court.'"  *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).  The Federal Rules of Civil

---

[2] To be clear, the discovery requests attached to Defendant's motion appear to be a combined set of interrogatories and requests for production of documents.  (ECF No. 50 at 7-24.)

Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

12

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

### B. ANALYSIS

A comparison of Plaintiff's responses as submitted by the parties reveals that Plaintiff's Fifth Supplemented responses have been revised from her Fourth Supplemented responses. The Court considers the specific Interrogatories currently at issue in turn.

#### 1. Interrogatory 19(a)

This Interrogatory and Plaintiff's current response thereto are set forth here verbatim:

*With respect to Paragraph 54 of the Complaint, in which Plaintiff states, in part, that "Mr. Hassan sexually assaulted Jane Doe in her home on at least three occasions. Jane Doe did not feel at liberty to report this, because of OSU's demonstrated tendency towards retaliation for reporting and deliberate indifference towards the will of complainants," please state as follows:*

*a) Please list with particularity each and every date and time on which Plaintiff was sexually assaulted by Hassan and describe in detail the alleged assaults.*

13

**Plaintiff's Answer No. 19(a):**

     i. Plaintiff objects to this request as highly invasive, unduly burdensome, oppressive, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.

          A. Most of the details of Plaintiff's assaults— what room they occurred in, what time of day, etc.— are not controlling issues in this case, and are therefore not time-sensitive.

     ii. Notwithstanding and without waiving this objection, Plaintiff intends to provide some of the information in her current possession that she believes may meet a reasonable interpretation of the apparent scope of Defendant's question as written:

          A. Plaintiff does not recall the dates at this time and has not been able to narrow them down further than between August and November.

          B. Mr. Hassan frequently coerced Plaintiff into having sex with him through persistent pressure and physical intimidation, however Plaintiff recalls at least three instances of Mr. Hassan using physical force despite her continual verbal commands to stop.

          C. For some of these instances, Plaintiff believes she may have written partial witness statement, and intends to search for this rather than describe these events from scratch at this time.

               1. Plaintiff intends to supplement this answer as soon as practicable and in accordance with applicable law.

Beyond this response, Plaintiff asserts that she has not furnished vivid recollections of her sexual assaults because they are irrelevant and because doing so would unnecessarily retraumatize her and increase her damages. Plaintiff's response reveals her awareness that it is not complete. Accordingly, given Plaintiff's stated intention to supplement, the Motion to Compel is **GRANTED** as to this Interrogatory. However, rather than require Plaintiff to "describe in detail the alleged assaults," the Court modifies the language of the Interrogatory to require that Plaintiff describe what occurred to the best of her recollection.

## 2. Interrogatory No. 20(b)

This Interrogatory and Plaintiff's current response thereto are set forth here verbatim:

**Defendant's Interrogatory No. 20:**

*Please state and list with particularity every fact upon which Plaintiff bases any claim or allegation that OSU or any Defendant: 1.) does not have proper or compliant Title IX policies; 2.) did not follow the law with respect to Title IX investigations or any other internal investigation at the University; 3.) engaged in disparate treatment toward Plaintiff; or, 4.) displayed bias toward Plaintiff.*

**Plaintiff's Answer No. 20(b):**

i. Plaintiff objects to this request as overbroad, unduly burdensome, oppressive, duplicative, containing multiple discrete subparts, asking plaintiff to make a legal conclusion, and seeking information not reasonably calculated to lead to the discovery of admissible evidence.

A. Several examples of each of these broad allegations are already contained within the Complaint, and others may be heavily implied.

B. Examples of OSU's Title IX noncompliant and deficient policies on paper and examples of specific OSU employees displaying bias and disparate treatment towards Jane Doe are separate and long lists.

ii. Notwithstanding and without waiving this objection, Plaintiff intends to restate some of the information in her current possession that she believes may meet a reasonable interpretation of the apparent scope of Defendant's question as written:

A. Plaintiff alleges that Defendants engaged in disparate treatment and/or bias against her when they:

1. Opened an investigation into her instead of Mr. Hassan in response to her police report;
2. Attempted to pressure Mr. Hassan into pursuing formal charges against her;

3. Brought formal charges against her despite Mr. Hassan's non-cooperation;
4. Allowed Mr. Hassan to make corrections to witness testimony after instructing Jane Doe that she could not do so;

> 5. Found her guilty of relationship violence, violating her
> fundamental right to self-defense;
> 6. Opened a Student Investigation against her despite telling her
> they would not do so;
> 7. Denied her appeal of the first investigation's results after the
> second exonerated her, whilst granting Mr. Hassan's appeal; and
> 8. Barred her from re-hire at OSU in perpetuity, while allowing
> Mr. Hassan back into the very lab where he assaulted her.
>
> B. Plaintiff does not merely assert that Defendants did not follow
> the law regarding Title IX investigations, but that they violated
> their own policies constantly, all the while quoting policy as their
> excuse to deny her justice.
>
> 1. These policies were drafted to help maintain compliance with
> Title IX and Title VII. As such, many of the violations of these
> policies are also violations of Title IX law e.g. the requirement to
> objectively evaluate all evidence. Plaintiff will not pass legal
> judgement on which she believes to be in violation of federal statute
> at this time.
>
> C. Under OSU policy, students and employees are afforded different
> rights. OSU initiated processes against Plaintiff targeting both her
> employee status and student status but held that she was only
> entitled to the rights of an employee during the former investigation
> and a student during the latter. If her status as a student was relevant
> to the incident (which was opened as an employee matter because it
> happened in the workplace) then she should have been granted rights
> as a student during both investigations. If her status as a student was
> not relevant, OSU never should have opened a second investigation.
> In the investigation where she was granted greater due process, she
> was, of course, exonerated.

Plaintiff explains that she "has not deigned to draw any legal conclusions about which

specific statutes of Title IX OSU has violated and how." Plaintiff's explanation suggests that,

from her perspective, she has responded to this Interrogatory, other than to assert legal

conclusions. The Court does not read the Interrogatory as requesting that Plaintiff provide "legal

conclusions." Rather, it appears to seek the factual bases for Plaintiff's claim. Thus, based on

Plaintiff's representations, she appears to be asserting that she has fully responded to this

Interrogatory. In failing to address Plaintiff's Fifth Supplemented responses, Defendant does not

16

contend otherwise. Accordingly, in the absence of any argument to the contrary, the Motion to Compel is **DENIED** as to this Interrogatory.

### Interrogatory 23[3]

Plaintiff does not appear to have revised her response to this particular Interrogatory between her Fourth and Fifth Supplemented responses. Accordingly, the Interrogatory and Plaintiff's current response thereto are set forth here verbatim:

**Defendant's Interrogatory No. 23:**

*Identify each and every healthcare provider, including, but not limited to, hospitals, clinics, physicians, psychologists, and/or mental health therapists, with whom you consulted with or who rendered treatment or counseling to you for physical, mental, emotional conditions. For each health care professional provide:*

*a) The name, business address, and title of each healthcare provider, and the nature of his or her area of specialty;*

*b) The date(s) when each consultation or treatment was rendered by each health care provider;*

*c) The purpose of each treatment or consultation rendered by each healthcare professional; and*

*d) The nature of each treatment or consultation rendered by each healthcare professional.*

**Plaintiff's Answer No. 23(b):**

i. Plaintiff objects to this request as overbroad, unduly burdensome, duplicative, seeking information that is irrelevant and not reasonably calculated to lead to admissible evidence, seeking information protected by doctor-patient privilege, and obstructive to Plaintiff's future health care.

> A. Defendant has demanded descriptions of all psychological and physical healthcare Jane Doe has obtained, failed to specify (let alone justify) any upper limit or relevance for the type of healthcare sought, and failed to provide a date range for this information.

---

[3] Plaintiff refers to this Interrogatory in its entirety as 23(b) perhaps to distinguish it from Request for Production 23 which Plaintiff refers to as 23(a)

B. Requiring Jane Doe to catalogue and disclose all healthcare she has received from birth until the conclusion of this lawsuit is outrageously burdensome and invasive, and the majority of information therein would be fully irrelevant to this case.

C. Plaintiff objects to any instructions by Defendant to supplement this interrogatory de facto with future medical records for psychiatric care.

1. The truth, cause, and consistency of Jane Doe's PTSD diagnosis as a damage suffered due to Defendant's actions has been sufficiently verified by the past therapy records she has disclosed.

Jane Doe intends to seek additional therapy for her PTSD in the future, yet she would be obstructed from speaking freely and building the vulnerable therapist-client relationship necessary to achieve fully effective care if she is burdened with the knowledge that opposing counsel will be reading through all of her therapy notes in search of irrelevant disclosures to weaponize against her.

These records shall continue to be privileged by physician/psychotherapist-patient confidentiality, and Defendant cannot reasonably argue that their probative value overcomes her presumptive right to privacy before the records have even been generated (and likely not after, either).

ii. Notwithstanding and without waiving this objection, Plaintiff intends to provide some of the information in her current possession that she believes to be within the scope of Defendant's request as written:

A. Plaintiff shall only disclose medical histories or descriptions thereof wherein the medical care sought was directly pursuant to investigating or treating damages and injuries sustained as a result of the events and allegations within her complaint. The primary medical conditions and/or impacts which Jane Doe has placed at issue in this matter **and** which may be discussed with some of her medical providers are her:

1. Injury to the medial collateral ligament ("MCL") of her right knee originally sustained on March 23, 2020, and any and all resultant right knee instability, pain, or other sequelae
2. Post-traumatic stress disorder ("PTSD")
3. Physical signs of stress and/or PTSD stemming from events and allegations within her complaint, including

18

a. New or worsened gynecological problems (namely secondary oligomenorrhea)
b. New or worsened sleep problems (namely nighttime insomnia, reduced sleep quality, and daytime fatigue)
c. New or worsened hair loss

4. Signs and symptoms of stress and/or PTSD stemming from events and allegations within her complaint that have impacted her social behaviors or social success
5. Signs and symptoms of stress and/or mental, emotional, or cognitive distress stemming from experiences/allegations/damages within her complaint that have impacted her general productivity and/or professional success

B. The only exception to the above are select files that Plaintiff has individually and specifically provided to act as a 'negative control' and to establish that certain damages did not predate the allegations.
1. For example, a medical history of "knee pain (2015)" is often auto- imported from MyChart into the new records generated when Plaintiff seeks care for other conditions. To avoid Defendants' potential confusion, some of the documents regarding Jane Doe's 2015 injury are provided to establish that her 2015 injury was to her left knee MCL, and her March 23, 2020 injury was to her right knee MCL.

C. Note that Jane Doe does not have access to most of her medical records generated prior to moving to Columbus to attend OSU in 2014. Medical providers are only required to preserve patient records for a set number of years, and when Jane Doe inquired in or around 2020 for copies of her medical records from both her family and from some of the providers who she recalled visiting as a minor, she was informed on both fronts that these records were lost.

D. In disclosing descriptions pursuant to this request, Plaintiff does not waive the right to object to providing redacted or unredacted copies of records of these visits or any irrelevant information within these records as necessary.

E. Plaintiff may discover (or realize the relevance of) additional injuries or symptoms at a later date, and reserves the right to supplement this information.

19

...[4]

> G. Plaintiff intends to supplement this answer as soon as practicable
> with records from dermatologist and somnologist care, documenting
> additional physical and psychiatric damages.

Plaintiff states that she has not listed every doctor who has ever treated her because she does not have the means to completely furnish such a list. She contends, essentially, that the burden of doing so would outweigh its benefit.

The Court agrees that, to the extent that the Interrogatory as drafted could be read as requiring her to include information relating to every doctor with whom she has treated over her lifetime, it is overly broad. Accordingly, the Court modifies the Interrogatory to limit Plaintiff's obligation to respond to include only the following:

> List all treating physicians or other health practitioners from the time you attended
> Ohio State through the present, including all primary care physicians, family
> physicians, or any other specialists, from whom you received care for injuries
> alleged in this case.

Plaintiff represents that she has supplemental information responsive to this Interrogatory. To the extent this remains so as this Interrogatory has been modified by the Court, the Motion to Compel is **GRANTED.**

## IV.    CONCLUSION

For the reasons stated above, the Clerk is **DIRECTED** to re-caption this matter as "*Jane Doe v. The Ohio State University, et al*." Further, Plaintiff is to be referred to in all public filings by the pseudonym Jane Doe. Accordingly, the Clerk is **DIRECTED** to terminate ECF Nos. 47 and 51 from the Court's pending motions list.

---

[4] The Court has omitted Plaintiff's response in subparagraph F as it is a list of files 'Plaintiff [has elected] to disclose" that "depict[s] relevant timelines" in lieu of restating the timeline. (ECF No. 55-1 at 138.)

Further, the Motions for a Protective Order (ECF Nos. 49, 52) are **GRANTED, in part,** and **DENIED, in part**, as set forth above. Defendant is **DIRECTED** to submit, **WITHIN SEVEN DAYS OF THE DATE OF THIS ORDER**, a copy of a Protective Order consistent with this Order, in Word format to Deavers_chambers@ohsd.uscourts.gov with a signature line for the Undersigned identical in form to that set forth below. Defendant's earlier Motion (ECF No. 20) is moot and the Clerk is **DIRECTED** to remove it from the Court's pending motions list.

Finally, Defendant's Motion to Compel (ECF No. 50) is **GRANTED, in part,** and **DENIED, in part,** as set forth above. Plaintiff is **DIRECTED** to provide the required Interrogatory responses to Defendant within **FOURTEEN DAYS AFTER THE DATE ON WHICH THE PROTECTIVE ORDER IS FILED WITH THE COURT.** This timing allows for Plaintiff to invoke any provisions of the Protective Order as applicable.

**IT IS SO ORDERED.**

Date: **August 7, 2024**                    _/s/ *Elizabeth A. Preston Deavers*_
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **UNITED STATES MAGISTRATE JUDGE**